UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ETHAN BOOK, JR.,<br><br>            Plaintiff,<br>v.<br><br>ROBERT MENDOZA and CLINT<br>INDEPENDENT SCHOOL DISTRICT,<br><br>            Defendants. | 3:07 - CV- 1468 (CSH) |

**MEMORANDUM AND ORDER**

HAIGHT, Senior District Judge:

**I.    BACKGROUND**

Plaintiff Ethan Book, Jr. ("plaintiff") brought an action arising out of the relocation to El Paso, Texas, of his ex-wife, Daisy Sanchez, and her two children from a previous relationship.[1] On December 13, 2006, following trial, the Honorable Edward Dolan of the Superior Court of Connecticut issued a judgment of dissolution of the marriage of plaintiff and Sanchez. Doc. #1 (Complaint), at ¶ 25. On July 13, 2007, plaintiff discovered that Sanchez had sold her residence in Bridgeport, Connecticut, and moved with her children to El Paso, Texas. *Id.* at ¶ 26. Upon arriving in Texas, Sanchez enrolled her children in the Clint Independent School District (herein "Clint School District") for which Robert Mendoza ("Mendoza") acted as Superintendent "during April or May of 2007." *Id*. Plaintiff attempted to obtain information about the Sanchez children's school

---

[1] Plaintiff and Sanchez were married on March 26, 2005. Doc. #1 (Complaint) at ¶ 20.

enrollment in Texas, first from the El Paso Independent School District, but learned that the children were not enrolled there. *Id.* Plaintiff next contacted various officials of the Clint School District, including Mendoza, to obtain information about the enrollment of the Sanchez children, but was denied access to such on the basis of state and federal privacy laws. *Id.* at ¶ 26-33. These officials also denied plaintiff's demands to take immediate steps to deny school accommodations to the Sanchez children. *Id.* at ¶¶ 31-33. Mendoza did, however, provide plaintiff with a requested copy of the standard registration form for enrollment of a student in the Clint School District. *Id*. at ¶ 31.

Plaintiff thereafter commenced his action before this Court against both Mendoza and the Clint School District. Doc. #1 (filed 10/3/2007). In the action, plaintiff sought, *inter alia*, injunctive relief. *Id.*, p. 16 ("Request for Relief"). Specifically, he requested an order that defendants provide him with all requested information regarding the enrollment of the Sanchez children and deny school accommodations to said children. *Id*. Plaintiff also sought declaratory relief that the Clint School District's "enrollment form is substantively defective." *Id.* Lastly, plaintiff requested damages in the amount of ten million dollars ($10,000,000.00), comprised of "economic, non-economic damages and punitive damages." *Id.*

On February 5, 2009, this Court, upon motion by defendants (Doc. #23), dismissed plaintiff's action in its entirety because the Court determined that it lacked personal jurisdiction over the Texas defendants under Connecticut's long-arm statute, specifically Conn. Gen. Stat. § 52-59b(a)(3).[2] Plaintiff appealed the Court's decision and the Second Circuit dismissed the appeal

---

[2]Connecticut General Statutes § 52-59b, captioned, "Jurisdiction of courts over nonresident individuals, foreign partnerships and foreign voluntary associations," provides in pertinent part:

(a) As to a cause of action arising from any of the acts enumerated in this section,

because it "lack[ed] an arguable basis in law and fact." *See* Doc. #107 (Mandate of Second Circuit, issued 11/29/2010) (citing 28 U.S.C. § 1915(e) and *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (defining when an action lacks an arguable basis in law or fact)).

Both prior to and following the Second Circuit's dismissal of his appeal, plaintiff filed numerous motions for reconsideration, articulation, and clarification of this Court's rulings. *See* Doc. #74, 75, 83, 85, 95, 105, and 108. Prior to plaintiff's appeal (Doc. #99), the Court granted his initial motion for reconsideration. Doc. #82 (granting Doc. #74). However, upon review of the plaintiff's motion papers, the Court chose to adhere to its previous ruling of dismissal. Doc. #82. Thereafter, plaintiff again moved for reconsideration and also filed motions for articulation and for clarification. Those motions were denied in an Order dated November 10, 2009. Doc. #91 (denying Doc. # 75, 83, & 85). Plaintiff then moved three more times for reconsideration (Doc. #95, 105, 108) and the Court denied each motion for the reasons stated in the November 10, 2009 Ruling (Doc. #91). *See* Orders at Doc. #101, 106, & 110.

Because the Second Circuit dismissed plaintiff's appeal as lacking an arguable basis in law or fact and because plaintiff had already filed seven motions for reconsideration of the Court's

---

> a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: . . . (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Conn. Gen. Stat. § 52-59b(a)(3)

dismissal of his action (Doc. #71), the Court ordered plaintiff "not to make any further filings in this case." Doc. #111 (filed 1/5/2011). Plaintiff was instructed that should he attempt to file in violation of the Court's Order, the Clerk was directed to "return such submissions to [p]laintiff without filing them." *Id.*

## II.     **MATTER BEFORE THE COURT:  LETTER FROM PLAINTIFF**

The Court is now in receipt of a letter from plaintiff, dated December 22, 2011, in which he seeks permission to file a motion pursuant to Federal Rule of Civil Procedure 60(b) to reopen this Court's judgment, dismissing his action for lack of personal jurisdiction over the defendants. *See* Doc. #71 (dated 2/5/2009). In support of his request, plaintiff asserts that "this Court does, in fact, have personal jurisdiction in this matter" because through "additional efforts," he has "recently learned that the ususal procedure for a transfer of a student from the Bridgeport school system to another school district is for the school district to which a student seeks to transfer to make a specific direct request to the Bridgeport school system." Letter at para. 2. Thus, plaintiff argues, such "supporting information . . . is determinative of the existence of minimum contacts for this Court's jurisdiction." *Id.*

As the Court previously stated in its Order (Doc. #71), plaintiff's contention that the Court has personal jurisdiction over the Texas defendants under Connecticut's long-arm statute, specifically Conn. Gen. Stat. § 52-59b(a)(3), was and remains fatally defective in that plaintiff failed to allege any facts or circumstances in which the defendants, Interim Superintendent Mendoza and the Clint School District, regularly do or solicit business in Connecticut, engage in any other persistent course of conduct in this state, or derive substantial revenue from goods used or services

4

rendered here. *See* Conn. Gen. Stat. § 52-59b(a)(3) (text set forth herein, *supra*, at n. 2). Moreover, because plaintiff failed to establish that the Connecticut long-arm statutes confer personal jurisdiction over defendants, the Court did not and need not now address whether the exercise of personal jurisdiction over defendants would comport with "due process" – including whether "minimum contacts" exist. *See, e.g., Bacarella Transp. Services, Inc. v. J.M. Logistics, LLC*, No. 3:11–cv–00147–WWE, 2011 WL 4549400, at *2 (D.Conn. Sept. 29, 2011) (court must first consider whether Connecticut's long-arm statute confers jurisdiction, and then it must determine whether such exercise comports with the Due Process Clause of the United States Constitution) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir.2010)).

Federal Rule 60 (b) of Civil Procedure sets forth "grounds for relief from a final judgment" and provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . . .
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) [i.e., within "28 days after the entry of judgment"].

Fed. R. Civ. P. 60(b)(2).

In the present case, plaintiff's newly proffered evidence is insufficient to warrant this Court's consideration of a Rule 60(b) motion to reopen. First, such alleged evidence of other school districts requesting transferring students' records or information from the Bridgeport School System fails to establish that the Texas defendants "regularly" or "persistently" solicited business or engaged in any other course of conduct in Connecticut. Second, even if one were to assume *arguendo* that such evidence were sufficient, plaintiff does not provide, nor does the Court conceive of, any reason that

plaintiff could not have, with reasonable diligence, acquired that evidence within 28 days following the entry of judgment. *See* Fed. R. Civ. P. 60(b)(2).

Also in his letter, plaintiff cites to an unaddressed "Motion for Rule 11(b) Sanctions and for Temporary Suspension of Order on Pretrial Deadlines (#49)." Letter at p.1-2. He then complains that the Court failed "to allow oral arguments on substantive pleadings," and "rul[ed] to dismiss for lack of personal jurisdiction before allowing discovery." *Id*. at p. 2. With respect to his motion for sanctions against opposing counsel and temporary suspension of pretrial deadlines (Doc. #49), the outcomes of such motions were rendered "moot" by the court's determination that it lacked personal jurisdiction over the defendants, mandating dismissal of the action.[3] The dates of pretrial deadlines and the allegedly questionable conduct of defendants' counsel had, and continues to have, no bearing on the outcome of the action. The Court simply could not assert personal jurisdiction over defendants where there was no adequate basis in law and in fact to do so.

Regarding plaintiff's concern that he was not permitted oral argument on his various motions, the decision as to whether a Court hears oral argument on a particular motion is one within the Court's discretion. *See*, D. Conn. L. Civ. R. 7(a)(1) ("Motion Procedures") ("Notwithstanding that a request for oral argument has been made, the Judge may, in his or her discretion, deny such request."). Thus, had the Court believed that oral argument would have assisted the Court in rendering its decisions, such oral argument would have been permitted.

Lastly, addressing plaintiff's complaint that he was not allowed discovery prior to the

---

[3]"Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies." *In re Zarnel*, 619 F.3d 156, 162 (2d Cir.2010) (citations omitted). *See also* Black's Law Dictionary (9th ed. 2009), defining "moot" as "[h]aving no practical significance; hypothetical or academic <the question on appeal became moot once the parties settled their case>.")

6

dismissal of his action, "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Moreover, before discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading, in good faith, legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt,* 902 F.2d 194, 197 (2d Cir.1990). *See also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994) ("Where ... the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction.").[4]  In plaintiff's action, however, even accepting the allegations in his Complaint as true, those allegations failed to confer personal jurisdiction over the defendants, rendering jurisdictional discovery unnecessary. *See, e.g.*, *Bacarella Transp. Services, Inc.,* 2011 WL 4549400, at *5.

## III. CONCLUSION

Plaintiff is once again reminded that the Second Circuit has dismissed his appeal as "lack[ing] an arguable basis in law and fact." *See* Doc. #107 (Mandate of Second Circuit, issued 11/29/2010). Moreover, this Court, in light of plaintiff's seven unsuccessful motions for reconsideration, imposed an explicit filing ban upon him. Doc. #111. Plaintiff's current effort to circumvent this ban, approaching the Court by letter, constitutes yet another fruitless attempt to expunge the affirmed judgment dismissing his action. Due to his *pro se* status, the Court clarifies

---

[4] Furthermore, a plaintiff is not permitted to undertake a "fishing expedition" based only upon bare allegations under the guise of jurisdictional discovery. *See, e.g.*, *Bacarella Transp. Services, Inc.,* 2011 WL 4549400, at *5 , Belden Techs., Inc. v. LS Corp.*, 626 F. Supp.2d 448, 459 (D.Del. 2009).

for plaintiff for the final time that the action of *Book v. Mendoza*, No. 3:07-cv-1468 (CSH), is permanently closed. Any future correspondence to the Court and/or attempted filings in this matter shall be rejected by the Clerk and/or returned by the Court.

    It is SO ORDERED.

Dated: New Haven, Connecticut
       January 23, 2012

                                */s/Charles S. Haight, Jr.*
                                Charles S. Haight, Jr.
                                Senior United States District Judge